I,SUSAN M. CHEHARDY, Judge.
In this workers’ compensation matter, after trial, the workers’ compensation judge found that the claimant suffered a compensable work-related injury, ordered claimant’s employer to pay all medical expenses resulting from that accident as well as supplemental earnings benefits for a specific period of time. The judge found, however, that claimant failed to establish a causal connection between her work-related accident and the disability that resulted from a subsequent motor vehicle accident. For the following reasons, we affirm.

Fact and Procedural History

In January of 1996, Lori Viars became a licensed practical nurse. In June of that year, Ms. Viars was in a serious motor vehicle accident, in which she suffered injuries to her neck, back, right knee, and *1145 head.[1] Eventually, Viars returned to the work force.
In January of 2000, Lori Viars began working for St. Anthony’s Nursing Home(“St.Anthony’s”) as a licensed practical nurse. Unfortunately, on July 11, 2000, while attempting to clean out the bottom drawer of the nurse’s medication Iscart, Viars was injured when the cart fell over onto her and several items struck her on the head. According to Viars, her left arm, right knee, right hip, right lower back, and her neck were injured in this accident. Further, she began to experience severe headaches on the right side of her head after the accident. Although Viars continued her shift that day, Viars requested and received medical treatment, at her employer’s expense, on July 13, 2000 for injuries she received in the accident. After she was examined, the treating physician restricted Viars to “light duty” at work.
From July 11, 2000 until September 27, 2000, Viars continued to work at St. Anthony’s under a “light duty” restriction. Although the parties differ as to the reason, all agree that, from September 27, 2000 until October 4, 2000, Viars was suspended from work. On October 4, 2000, on her way to work, Viars was involved in another motor vehicle accident. In that accident, she suffered an injury that resulted in pain in her left lower back and shoulders.
On October 25, 2000, the claimant, Lori Viars, filed a disputed claim for compensation with the Office of Workers’ Compensation against her employer, defendant, St. Anthony’s, and its insurer, LUBA. Viars alleged that she suffered a compensable injury while in the course and scope of her employment with St. Anthony’s, which was exacerbated to the level of disability by a subsequent motor vehicle accident, but that defendants refused to pay disability benefits or authorize medical treatment after the subsequent motor vehicle accident.
On October 25, 2001, the matter proceeded to trial before the Office of Workers’ Compensation judge, who took the matter under advisement and left the record open for submission of post-trial mem-oranda. On December 11, 2001, the judge rendered judgment, finding that Viars suffered a compensable work-related injury on July 11, 2000; awarded supplemental earnings benefits of $384.00 per week from September 27, 2000 through October 4, 2000 (the date of the |4subsequent accident); and ordered payment of all medical bills and medication expenses resulting from the July 11, 2000 accident. The judge found, however, that the claimant did not' establish a causal connection between her July 11, 2000 work-related accident and the disability that she suffered after her October 4, 2000 motor vehicle accident.
Viars has appealed, assigning four errors: the trial court erred in failing to recognize that job-related injuries that are later aggravated in a subsequent accident remain compensable; the trial court erroneously concluded that plaintiffs ‘disability’ ended on October 4, 2000 when she had a second accident; the employer’s responsibility for medical expenses should be specified since the trial court failed to make a specification; and penalties and attorney’s fees are warranted, but were not awarded by the trial court.
It is well settled that the claimant in a workers’ compensation case has the burden of proving a work-related accident and resultihg injury by a preponder- *1146 anee of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). The claimant’s testimony may suffice to meet the burden, provided there is no other evidence sufficient to discredit or cast doubt upon the claimant’s version of the incident, and his testimony is corroborated by circumstances following the accident. Id. Corroboration of the worker’s testimony may, be provided by the testimony of fellow workers, spouses or friends; corroboration may also be provided by medical evidence. Id.
When a work-related injury is subsequently exacerbated, the aggravation is regarded as a development of the initial accident, and not an intervening cause, even though it occurs away from work and even after the employment is terminated. Hanover Ins. Co. v. Allstate Ins. Co., 554 So.2d 1261, 1264 (La.App. 1st Cir.1989). It is a compensable injury for workers’ compensation purposes, and the employer is obligated to continue paying benefits. Stewart v. Hospitals Affiliates Int’l, 404 So.2d 944, 945 (La.1981). The key question is whether the off-the-job injury was foreseeable and came about as a result of the work injury having predisposed the victim to future injury. If so, the subsequent injury is compensable. Hanover, 554 So.2d at 1264.
Lastly, although the claimant does not necessarily have to establish the exact cause of the disability, the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Woods v. Ryan Chevrolet, Inc., 30,206 (La.App. 2 Cir. 2/25/98), 709 So.2d 251, writ denied, 98-1169 (La.6/5/98), 720 So.2d 689. An injured worker’s disability is presumed to have resulted from an accident, if before the accident the worker was healthy and thereafter the symptoms of the disabling condition appear continuously, and if the medical evidence shows a reasonable possibility of a causal connection between the accident and the injury. Lucas v. Insurance Co. of North America, 342 So.2d 591 (La.1977). If the evidence leaves the probabilities of causation equally balanced, the claimant has failed to carry her burden of proof. Bernard v. O’Leary Brothers Signs, Inc., 606 So.2d 1331 (La.App. 3 Cir.1992).
The standard of review of findings of fact of a hearing officer in a workers’ compensation case is manifest error. Doucet v. Baker Hughes Prod. Tools, 93-3087, p. 4 (La.3/11/94), 635 So.2d 166, 168 n. 3; Bruno v. Harbert Int’l, supra. Under this standard, the reviewing court does not ask whether the factfinder is right or wrong, but whether its conclusion was reasonable. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993). These findings will be reversed only if they are clearly wrong.
In written reasons, the workers’ compensation judge found that the claimant was injured in a work-related accident on July 11, 2000, but that claimant failed to establish a causal connection between that work-related accident and the disability that resulted from a subsequent motor vehicle accident. We have reviewed the | (¡entire record in this case, including the volumes of Viars’ medical records introduced at the workers’ compensation hearing, particularly those for treatment in the year 2000. We observed the following from the record.
In June of 1996, Viars was in a serious motor vehicle accident, in which she suffered injuries to her head, neck, back, and right knee. She candidly testified that she was unable to remember the eighteen months that followed that accident. At the time of trial, Viars had undergone two surgeries on her right knee and continued to receive treatment for neck and back *1147 pain. She also reported that she was still involved in litigation over this accident, in which she alleged that she suffered a closed head injury when the air bag deployed during the accident. Further, she testified that she had suffered with migraines since the 1970’s.
When Viars began working for St. Anthony’s, she had recurring pain in her neck, back, and right knee, and muscle spasms in her back from her motor vehicle accident. She was still taking prescription pain medication on a regular basis, and continued to see her treating orthopedist, Dr. Courtney Russo, for “maintenance.” In fact, Dr. Russo’s records indicate that Viars had five office visits between January and July of 2000 (during which she received treatment and medication) and telephoned for medication refills on at least three other occasions during the same time period.
Interestingly, although Viars testified that she was physically able to perform her work duties at St. Anthony’s without medical restrictions,[2] her treating orthopedist, Dr. Russo, stated that, based on his observation of Viars since February of 1999, Viars should not be “... lifting, bending, reaching when you have a neck and back problem and knee problem.” He characterized her as “regulated to a very sedate-type activities[sic].” In sum, her treating orthopedist |7stated that she had ongoing medical problems from her 1996 motor vehicle accident.
We find that there is ample evidence in the record to support the workers’ compensation judge’s finding that, on July 11, 2000, Viars was injured in a work-related accident. According to Viars, her left arm, right knee, right hip, right lower back, and her neck were injured in this accident. After receiving medical treatment, Viars was placed on “light duty.” When Dr. Russo examined Viars after the St. Anthony’s accident, he found that she did not suffer any increased restrictions and could continue to work on “light duty.” Regina Patterson, a claims adjuster for St. Anthony’s insurance administrator, testified, at trial, that she relied on Dr. Russo’s diagnosis in determining that Viars’ accident at St. Anthony’s exacerbated her pre-existing injuries, but did not result in a disability.
In fact, Viars continued to work at her pre-injury wage until she was suspended on September 27, 2000. Further, St. Anthony’s records reflect that Viars regularly worked ten and twelve-hour work days and overtime from July to September of 2000. Moreover, in a recorded statement to Regina Patterson on August 22, 2000, Viars stated that St. Anthony’s was “really working with me” regarding scheduling and working within her restrictions.
Finally, the record shows that the injuries that she received when she fell at St. Anthony’s were predominantly to the right side of her body, but the motor vehicle accident on October 4, 2000 caused injuries to the left side of her body.
At trial, Viars reported that her headaches have gotten so severe that she has been dizzy eleven times in the past year and has passed out five times in the past year.[3] According to the record, although Viars reports that she began to experience Lsevere headaches only after her fall at St. *1148 Anthony’s, the record indicates that Viars has suffered with and received treatment for migraines since the late 1970’s and also that she suffered a closed head injury in her 1996 motor vehicle accident. Clearly, Viars had a history of headaches as well as a head injury. Furthermore, there is no medical testimony in the record to support Viars claim that the St. Anthony’s accident exacerbated her pre-existing headache symptoms. In fact, in September of 2000, Viars underwent a CT scan, which revealed results within normal limits.
Finally, although Dr. Russo examined Viars several times between her July 11, 2000 accident at St. Anthony’s and her October 4, 2000 motor vehicle accident, he did not declare her disabled from work until after her October 4, 2000 motor vehicle accident. Clearly, in this case, the workers’ compensation judge found that Viars failed to establish that her disabling injuries (headaches and the injuries to her left side) that allegedly resulted from her off-the-job injury (the October 4, 2000 motor vehicle accident) were foreseeable and came about as a result of the work injury having predisposed the victim to future injury. Based on our thorough review of the record, we cannot say that the workers’ compensation judge was clearly wrong. Consequently, we find that claimant’s first and second assignment of error lack merit.
In her third assignment of error, claimant argues that the workers’ compensation judge should have specified the employer’s responsibility for medical expenses. In her written reasons for judgment, the workers’ compensation judge stated that, “Claimant is entitled to the payment' of all medical bills, and medication expenses for her head, neck, back, right knee, arms, and hip injuries, resulting from the accident on July 11, 2000.”
Claimant alleges that the employer has failed to pay for treatment by Dr. Russo, and will not authorize an MRI of her right knee and a neurological consult. |3 The record does not support her allegations. Our review indicates that payment was made to Dr. Russo for his treatment of Viars between July 11, 2000 and October 4, 2000. Further, while Dr. Russo recommended a neurological consult, he also admitted that he was unaware when he made that recommendation that Viars had a CT scan in September of 2000, which reflected results within normal limits. Finally, with regard to her right knee, she admitted that she had two previous surgeries on that knee and other extensive problems. The record did not contain medical testimony that the current status of her right knee is related to her fall at St. Anthony’s. Claimant’s third assignment of error is without merit.
Finally, claimant alleges that she is entitled to penalties and attorney’s fees. In J.E. Merit Constructors, Inc. v. Hickman, 00-943 (La.1/17/01), 776 So.2d 435, 437-438:
Under La. R.S. 23:1201.2, reasonable attorney’s fees are awarded as a penalty under the workers’ compensation law when an employer discontinues payment of benefits, ‘when such discontinuance is found to be arbitrary, capricious, or without probable cause.’ Arbitrary and capricious behavior is willful and unreasonable action, without consideration and regard for the facts and circumstances presented. An award of attorney’s fees in a workers’ compensation case is essentially penal in nature, as it is intended to discourage indifference and undesirable conduct by employers and insurers. Attorney’s fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee’s entitlement to benefits, and the mere fact that an employer loses a *1149 disputed claim is not determinative. (Citations omitted).
Applying these precepts to the case before us, it is clear that St. Anthony’s actions do not rise to the level of being arbitrary, capricious, or without probable cause. In both instances, a bona fide dispute existed between St. Anthony’s and Viars concerning the facts and the law. Significantly, the workers’ compensation judge found in favor of Viars regarding her status as an injured employee and for St. Anthony’s on the disputed issue of disability after her subsequent injury. The finding of the workers’ compensation judge in favor of St. Anthony’s is virtually ^Inconclusive that its actions were reasonable and were not arbitrary and capricious. Claimant’s fourth assignment of error also lacks merit.
For the foregoing reasons, we affirm the judgment of the workers’ compensation judge. Costs of this appeal are assessed equally among the parties.

AFFIRMED.

. That accident is the subject of a personal injury lawsuit, which is not connected with the instant action.

. At trial, both Viars and her supervisor, Rene Apostol, testified that Viars did not have difficulty performing her job from January until July 11, 2000.

. Interestingly, Viars testified at trial her headaches were so bad that she told the other nurses at St. Anthony's to catch her if she passed out from the pain. When her attorney reminded her that she did not go back to work at St. Anthony's after her October 4, 2000 car accident, she indicated that she had experienced dizziness before her October 4, 2000 motor vehicle accident.